RECEIVED

JAN – 3 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| COLVILLE PLUMBING & IRRIGATION, INC. | CIVIL ACTION NO. 6:12-CV-1444 |
| VERSUS | JUDGE DOHERTY |
| CENTURY SURETY COMPANY, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Currently pending before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted"), filed by defendant Century Surety Company ("Century"). [Doc. 37] By way of its motion, Century seeks a judgment dismissing the claims asserted against it by plaintiff, Colville Plumbing & Irrigation, Inc. ("Colville"), for defense, indemnity, penalties, attorney fees and costs.  By way of its motion, Century argues the policy of insurance it issued on behalf of plaintiff provides no coverage for the underlying damage claim for which plaintiff now seeks a defense and indemnity.  For the reasons which follow, Century's motion is DENIED.

## I.      Factual and Procedural Background

According to the complaint filed in this matter, "[o]n or about June 10, 2008, Colville entered into a construction subcontract with general contractor, EMR, Inc.," to lay underground plumbing and sewer lines for "the construction of a Hampton Inn & Suites in New Iberia, Louisiana." [Doc. 1-1 at ¶¶ 6-7]  "In or about late August or September, 2008, after Colville had completed its work, Colville was contacted by EMR to perform repair work to the piping caused by cinder block walls

1

which had fallen during a weather event." [Id. at ¶ 8] Colville performed certain repairs in September 2008, and submitted an invoice to EMR for the repair work in October 2008. [Id. at ¶ 10] No further work was done by Colville in connection with this project.  On February 10, 2010, EMR "submitted a demand to Colville, claiming that the underground sewer lines installed by Colville under the June 10, 2008 subcontract did not have the proper slope to drain. . . ." [Id. at ¶ 11] EMR subsequently identified its "estimated date of loss" as December 20, 2009. [Doc. 1-1, ¶ 13]

From April 13, 2008 until April 13, 2009 (*i.e.* that period of time during which all work by Colville on the Hampton Inn and Suites was performed), Colville had general liability coverage through Trinity Universal Insurance Company ("Trinity"). [Doc. 1-1, ¶ 4] From April 13, 2009 until April 13, 2010 (*i.e.* that period of time during which Colville received notice of EMR's claim), Colville had general liability coverage through Century. [Id. at ¶ 5]  On March 9, 2010, Colville provided notice of EMR's claim to Trinity. [Id. at ¶ 12]  Trinity subsequently declined to provide any defense or indemification to Colville. [Id. at ¶¶ 16, 20]  On or about July 16, 2010, a claim was submitted to Century on behalf of EMR "for the replacement of the sewer lines," and identifying EMR's "estimated date of loss" as December 20, 2009.[1]  [Id. at ¶ 13]  On May 2, 2011, Century "issued a declination of coverage, refusing to defend or indemnify Colville in connection with the EMR claim." [Id. at ¶ 14]

On February 14, 2012, EMR filed an arbitration suit against Colville[2], asserting in part: "'Colville failed to perform its work on the project in compliance with the plans and specifications

---

[1]December 20, 2009, would fall within that period of time in which Colville was insured by Century.

[2]The contract between EMR and Colville purportedly contains a provision requiring binding arbitration for any claim arising out of or related to the subcontract. [Doc. 1-1, ¶ 6]

and in a workmanlike manner,'" and "'Colville installed sewer lines not in compliance with the plans and specifications and not in compliance with local codes.'" [Doc. 1-1, ¶¶ 6, 11, 17; Doc. 35, ¶ 38] That same month, Colville "renewed its demand [to Trinity and Century] for defense and indemnification in connection with the claim. . . ." [Id. at ¶ 19] Both Century and Trinity "declined to provide any defense or indemnification to Colville in connection with the subject claim."[3] [Id. at ¶ 20]

On May 7, 2012, Colville filed a petition in state court seeking a "declaratory judgment, holding that Century Surety Company or Trinity Universal Insurance Company, or both, be ordered to provide a defense to Colville in connection with the pending arbitration proceeding." [Id. at ¶ 34] Colville additionally sought a judgment against Century and Trinity, "finding that there is coverage for the subject claim, or alternatively, declaring that the denials of coverage issued by both insurers are premature and void without any effect at this time." [Id. at ¶ 35] Finally, Colville sought an award of "penalties, attorney's fees, and damages, as a result of their arbitrary and capricious denial of defense and indemnity, and actions in handling this claim." [Id. at ¶ 36] On June 1, 2012, Century and Trinity removed Colville's suit to this Court on the basis of diversity jurisdiction. [Doc. 1]

## II.    Standard for Motion to Dismiss

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P. 8(a)(2). The purpose of the

---

[3]According to the complaint, Megha, LLC, the premises owner, also filed an arbitration demand adverse to EMR, seeking repair or replacement of the defective plumbing work, as well as repairs of the damages caused by the defective plumbing work. [Doc. 35, ¶ 41] (Megha, LLC alleges the defective plumbing caused toilets to overflow, resulting in damage to the carpet, flooring, walls, and other portions of the hotel. [Doc. 35, ¶ 40]) According to Colville, "Under the sub-contract between Colville and EMR, Colville is required to defend and indemnify EMR from claims associated with Colville's work." [Id. at ¶ 43]

foregoing rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Where a complaint fails to state a claim upon which relief can be granted, the court is permitted to dismiss the complaint as a matter of law. Fed.R.Civ.P. 12(b)(6); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The general rule when deciding a Rule 12(b)(6) motion is that if matters outside of the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment pursuant to Rule 56. Fed.R.Civ.P. 12(b); *see also Clark v. Tarrant County, Texas*, 798 F.2d 736, 745 (5th Cir.1986). One exception to the general rule is that "the Court may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim." *Kane Enterprises v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir.2003); *see also Lone Star Fund (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  In this matter, because Century attached the contract of insurance to its motion, and because the contract was referred to in the complaint and is central to plaintiff's claim, the Court will consider the terms of the insurance contract in assessing the motion to dismiss.  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).  However, the Court declines to

consider the "Demand for Arbitration" [Doc. 37-4] and "EMR, Inc.'s Specification of Claims" [Doc. 37-5], attached to Century's motion to dismiss.  Accordingly, the motion will be treated as a motion to dismiss.

## III.   Applicable Law

All parties appear to agree the insurance policy is to be interpreted in accordance with Louisiana law.  "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also Fontenot v. Diamond B Marine Services, Inc.*, 937 So.2d 425, 428 (La. App. 4 Cir. 2006).  "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract." *Cadwallader* at 580; La. Civ. Code art. 2045.  "The parties' intent, as reflected by the words of the policy, determine [sic] the extent of coverage." *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 1994).  As recognized by the Louisiana Supreme Court:

> The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.
>
> It is equally well settled, however, that subject to the . . . rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.

*Elliott v. Continental Cas. Co.*, 949 So.2d 1247, 1254 (La. 2007)(quoting *Reynolds*, 634 So.2d at 1182-83)(emphasis omitted).

The words of an insurance contract are not to be read in isolation, as "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. R.S. § 22:881.  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "The words of a contract must be given their generally prevailing meaning.  Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047.  "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048.  "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049.

As stated by the Louisiana Supreme Court:

> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage.  Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written.  Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

*Cadwallader* at 580 (internal citations omitted; emphasis in original); *see also Credeur v. Luke*, 368 So.2d 1030, 1032 (La. 1979)("The established rule is that any doubt or ambiguity as to the meaning

of a provision in an insurance policy must be construed liberally in favor of the insured and against the insurer. When the ambiguity relates to a provision which limits liability under the policy, the law requires that the contract be interpreted liberally in favor of coverage.")

"In an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage." *Tunstall v. Stierwald*, 809 So.2d 916, 921 (La. 2002). "[O]n the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within the policy." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000); *see also Martco Ltd. v. Wellons, Inc.*, 588 F.3d 864, 880 (5th Cir. 2009). Additionally, "[p]olicy exclusions must be clearly stated." *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1252 (La. 1993). If the insurer "cannot unambiguously show an exclusion applies, the Policy must be construed in favor of coverage." *Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864, 880 (5th Cir. 2009).

With regard to the duty to defend, such duty is broader than an insurer's liability for damage claims. *American Home Assur. Co. v. Czarniecki*, 230 So.2d 253, 259 (La. 1970). As stated by the Fifth Circuit:

> Under Louisiana law, an insurer has a duty to defend its insured unless the allegations in the complaint unambiguously exclude coverage. Coverage is determined by comparing the allegations in the complaint with the terms of the policy, and the court is to look only at the face of the complaint and the insurance contract in reaching this determination. The insurer has a duty to defend its insured if the complaint discloses the possibility of liability under the policy. Thus, if the complaint alleges a single claim against the insured that is covered by the policy, the insurer must defend the entire lawsuit, even those claims clearly excluded from coverage.

*Alert Center, Inc. v. Alarm Protection Services, Inc.*, 967 F.2d 161, 163 (5th Cir. 1992)(citations omitted). As this Court is permitted to look *only* to the complaint and the policy to determine

7

coverage, the Court finds there is no reason to defer ruling for the parties to conduct discovery, as urged by plaintiff.

## IV.   Analysis

Century filed the pending motion to dismiss, arguing it "has no liability under the Policy . . . to defend or indemnify Colville because the alleged construction defect existed prior to the Policy's effective date."[4] [Doc. 37-1, p.6] The Commercial Lines Policy issued by Century to Colville provides in pertinent part as follows:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.   Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    . . . .

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**    The "bodily injury" or "property damage":

---

[4]Century identifies the "construction defect" as: "improper slope." [Doc. 37-1, p.10]

> **(a)** did not first exist, or first occur, in whole or in part, prior to the inception date of this policy; or
>
> **(b)** was not, nor is alleged to have been, in the process of taking place prior to the inception date of this policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or
>
> **(c)** *was not caused by any construction defect or condition which resulted in "bodily injury" or "property damage" which first existed, prior to the effective date of this policy;*
>
> **(4)** Prior to the policy period, no insured listed under Paragraph **1.** of **Section II - Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

[Docs. 37-6, p.14; 37-7, p.18 (bold emphasis in original; italics added)][5] The policy defines

---

[5]The language of paragraph "**b.**," quoted above, was added to the policy by way of an endorsement. The original policy language stated in pertinent part as follows:

> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy

9

"occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"; "'Property damage' means: . . . Physical injury to tangible property, including all resulting loss of use of that property."  [Doc. 37-6, pp.27-28]

The parties' dispute centers solely around the application of section b(3)©.  Accordingly, for purposes of this motion, there is no dispute that: (1) the property damage was caused by an occurrence which took place in the coverage territory; and (2) the property damage occurred during the policy period.  Therefore, there is coverage "only if . . . the . . . 'property damage' . . . was not caused by any construction defect or condition which resulted in . . . 'property damage' which first existed, prior to the effective date of this policy. . . ." [Doc. 37-1, p.6] Again, Century argues "because the alleged construction defect existed prior to the Policy's effective date," there is no duty to defend or indemnify Colville. [*See* Doc. 37-1, p. 6]

In response, Colville first argues Century's position is based on a faulty assumption - specifically, that Century "assumes that the construction defect 'must have existed' by August or September 2008, because this was the 'last date of work' alleged by Colville." [Doc. 13, p. 14] According to Colville, the underlying allegations lack sufficient detail to determine "whether or what incident may have occurred (or when it occurred) that led to the discovery of damages by EMR– [and] it certainly can't be determined whether there was some sort of collapse, deterioration, accident

---

period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

[Doc. 37-6, p.14 (emphasis in original)] Thus, the endorsement is identical in all respects, save the insertion of elements (3)(a) - (3)(c).

or other 'event' that took place during the Century Surety policy and resulted in the loss to EMR which was apparently discovered in or about December 2009." [Id.] However, according to the complaint, the "incident . . . that led to the discovery of damages by EMR" was that Colville had improperly installed underground sewer lines, which did not have the proper slope to drain. [Doc. 1-1, ¶ 11] As Colville had completed all work on the project (including repair work) by September 2008, the alleged "construction defect," as set forth in the Complaint, necessarily had to have existed prior to the Century policy taking effect.

Colville next argues Century's interpretation of section b(3)(c) is flawed. More specifically, Colville argues the particular policy provision excludes coverage only if "*both* the 'construction defect or condition' *and* the 'property damage' pre-exists [sic] the subject policy."[6] [Doc. 39, pp. 2-3 (emphasis added); *see also* Doc. 13, pp. 18-19] Colville asserts: the "manifestation theory"[7] is the

---

[6]Colville notes that the terms "construction defect" and "condition" are not defined in the Century policy. [Doc. 37, p.2]

[7]There are two prevailing theories under Louisiana law as to "whether an 'occurrence' occurs during a policy period of insurance coverage," to wit: the exposure theory and the manifestation theory. *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 278, n.75 (La. 2011).

> Under the exposure theory, damage would be considered to have occurred when the act which resulted in the damage took place, not when the damage was discovered. Thus, where damage develops over a period of time from continuous or repeated exposure to injurious conditions, courts have determined that the occurrence took place either at the inception of the exposure period or continuously during the entire course of exposure, as in asbestos cases. Even where the damage or injury was not manifested until after an insurer's policy period, if the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable.

> Under the manifestation theory, property damage would be considered to have occurred when it became manifest, regardless of when the act from which it resulted occurred.

*Id.* (citations omitted). While the Louisiana Supreme Court has not specifically adopted either theory in the context of construction defects, "the clear weight of authority in more recent cases considers defects in construction that result in damage subsequent to completion to be accidents and occurrences when

"prevailing rule under Louisiana law"; pursuant to the manifestation theory, property damage is deemed to have occurred on the date in which it manifests; "it is unknown when EMR 'discovered' the property damage"[8]; and thus, "absent proof that the property damage was discovered by EMR *prior* to April 13, 2009, Century Surety cannot rely on this subpart as excluding coverage." [Doc. 13, p. 19] Colville argues Century's construction of the exclusion - *i.e.* "that the reference to bodily injury and property damage merely modifies the phrase 'construction defect or condition'" - could only possibly be correct "if there were a comma after the phrase 'property damage.'"[9] [Id.] Colville concludes, "At the very least, the clause relied upon [by] Century Surety is ambiguous and should be construed in Colville's favor." [Id.]

In its reply memorandum, Century responds to the foregoing argument as follows:

> Colville argues that section b.3.c. should be interpreted to potentially provide coverage unless the "property damage" **both** (I) "was not caused by any construction

---

they manifest themselves." *Rando v. Top Notch Properties, L.L.C.*, 879 So.2d 821, 833 (La. App. 4 Cir. 2004); *see also Mangerchine v. Reaves*, 63 So.3d 1049, 1058 (La. App. 1 Cir. 2011)("A review of Louisiana jurisprudence involving third-party claims for construction defects under commercial general liability (CGL) policies shows that the manifestation theory is the most generally-accepted trigger theory for such claims."); *Oxner v. Montgomery*, 794 So.2d 86, 92-93 (La. App. 2 Cir. 2001); *Clarendon America Ins. Co. v. Southern States Plumbing, Inc.*, 803 F.Supp.2d 544 (W.D.La. 2011); *Liberty Mut. Ins. Co. V. Jotun Paints, Inc.*, 555 F.Supp.2d 686, 696-97 (E.D.La. 2008).

[8]To this end, Colville asserts discovery is warranted, and thus, the motion to dismiss is premature. [*See e.g.* Doc. 39, p.2] However, for purposes of the pending motion, the Court notes according to the facts set forth by plaintiff in the complaint, EMR has provided an "'estimated date of loss' of December 20, 2009," which would be that period of time in which coverage was provided by Century. [Doc. 13, p. 9; *see also* Doc. 1-1, ¶ 13]

[9]In other words, Colville argues if the disputed language contained the following comma (in brackets and bold type), Century's argument "[p]erhaps . . . might make sense": "This insurance applies to . . . 'property damage' only if: . . . [t]he . . . 'property damage': . . . was not caused by any construction defect or condition which resulted in . . . 'property damage' [,] which first existed, prior to the effective date of this policy. . . ."

defect or condition" **and** (ii) "first existed, prior to the effective date of this policy".[10] This reading is contrary to the plain language as the clause "which first existed, prior to the effective date" modifies "construction defect or condition" at the beginning of the phrase. Moreover, Colville's interpretation would render section b.3.c. as the equivalent to section b.3.a. which removes coverage if:

> **(3)**     The "bodily injury" or "property damage":
> **(a)**     did not first exist, or first occur, in whole or in part, prior to the inception date of this policy. . . .

Colville's interpretation ignores the plain language of the Policy and Louisiana law. Under Louisiana law, one policy provision is not to be construed separately at the expense of disregarding other policy provisions. La. C.C. Art. 2050. . . . The only interpretation that does not render section b.3.a. of the insuring agreement meaningless is that there is no coverage for any property damage caused by construction defects that existed before the policy period began.

[Doc. 40-1, pp.8-9]

Again, the disputed provision of the policy provides as follows: "This insurance applies to . . . 'property damage' only if: . . . the . . . 'property damage': . . . was not caused by any construction defect or condition which resulted in . . . 'property damage' which first existed, prior to the effective date of this policy. . . ." It appears to this Court that there are two possible interpretations of the disputed provision: (1) the dependent clause "which first existed, prior to the effective date of this policy" solely modifies the term "property damage," contained in the immediately preceding dependent clause[11]; or (2) both dependent clauses - *i.e.* "[1] which resulted in . . . 'property damage'

---

[10]Century has misstated Colville's position. As noted, Colville argues section b(3)(c) excludes coverage only if "both the 'construction defect or condition' *and* the 'property damage' pre-exists [sic] the subject policy." [Doc. 39, pp. 2-3; *see also* Doc. 13, pp. 18-19 ("Rather, on its face, this clause requires *both* a construction defect AND 'property damage' which pre-exists the effective date of the policy.")(emphasis in original)]

[11]Stated otherwise, the portion of the sentence set forth in bold type would be modified by the portion in italics: "This insurance applies to . . . 'property damage' only if: . . . the . . . 'property damage': . . . was not caused by any construction defect or condition which resulted in . . . **'property damage' which first existed, prior to the effective date of this policy. . . .**"

[and 2] which first existed, prior to the effective date of this policy" - modify "construction defect or condition."[12]   The first alternative construction would provide coverage for this incident; the second would not. By inference, it would seem the second alternative is that which Century would argue is correct.[13]

According to defendant's argument, alternative (1) would be incorrect, because it would "render section b.3.a. of the insuring agreement meaningless," by "render[ing] section b.3.c. as the equivalent to section b.3.a. . . ."[14] [Doc. 40-1, p.9] While this argument is seductive at first glance, the Court notes this particular provision of this particular insurance contract is not drafted in a particularly clear or concise manner.  Indeed, utilization of Century's argued method of contract interpretation would also render section b(2) ("The . . . 'property damage' occurs during the policy period") superfluous in light of section b(3)(a) ("The . . . 'property damage': did not . . . first occur, in whole or in part, prior to the inception date of this policy).  Furthermore, this alternative would seem to be the more common interpretation given to this poorly drafted sentence.

The construction urged by defendant (*i.e.* the clause "which first existed, prior to the effective

---

[12]Stated otherwise, the portion of the sentence set forth in bold type would be modified by the portion in italics:"This insurance applies to . . . 'property damage' only if: . . . the . . . 'property damage': . . . was not caused by any **construction defect or condition** *which resulted in . . . 'property damage' which first existed, prior to the effective date of this policy. . . ."*

[13]As noted, Century argues the dependent clause "'which first existed, prior to the effective date' modifies 'construction defect or condition' at the beginning of the phrase." [Doc. 40-1, p. 8] Although Century does not address the intervening dependent clause (*i.e.* the clause which reads, "which resulted in . . . 'property damage'"), the only conclusion one can draw (as it is the only conclusion comporting with ordinary grammar rules) is that Century would agree the clause "which resulted in . . . 'property damage'" also modifies "construction defect or condition."

[14]Again, section b.(3)(a) provides: "The . . . 'property damage': did not first exist, or first occur, in whole or in part, prior to the inception date of this policy. . . ."; section b.(3)(c) provides: "The . . . 'property damage' . . . was not caused by any construction defect or condition which resulted in . . . 'property damage' which first existed, prior to the effective date of this policy. . . ."

date of this policy" modifies "construction defect or condition") would not seem to comport with ordinary syntax and punctuation rules. Defendant argues, "even *assuming* that the 'property damage' began after the Century Policy's effective date," there is no coverage because "the construction defect existed prior to the effective date of the Century Policy."[15] [Doc. 37-1, p. 10 (emphasis in original)] Thus, when one assumes (as one must) that the property damage manifested during the existence of the Century policy, then according to defendant's argument, the disputed provision of the policy would read as follows: This insurance applies to property damage only if: the property damage was not caused by any construction defect or condition (which resulted in property damage) which first existed prior to the effective date of this policy.  Because for these purposes one assumes the property damage manifested during the existence of the Century policy, according to Century's argued construction of the language, the clause "which first existed, prior to the effective date of this policy" *only* modifies "construction defect or condition" and does *not*  modify the term "property damage" from the preceding clause. Such a construction would not appear to comport with any traditional rules of syntax and punctuation, as it would require the reader to intuitively know the clause "which resulted in property damage" should be set off by parentheses.

In this matter, there are two possible interpretations of the disputed language - one which would provide coverage to plaintiff and one which would not.  Pursuant to Louisiana law, any ambiguity in the contract must be interpreted in favor of the insured.  *See* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d

---

[15]Again, according to the complaint, the property damage did not manifest or occur until coverage by Century was in effect. [Doc. 1-1, ¶¶ 11, 13]

1134, 1138 (La. 2002)("[I]f an ambiguity remains after applying the general rules of contractual interpretation to an insurance contract, the ambiguous contractual provision is construed against the insurer who furnished the contract's text and in favor of the insured.")  Accordingly, the motion to dismiss [Doc. 37] is DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___3rd___ day of January, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE